UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Court File No.:

Kelly Quigley, individually and on behalf of her minor child, OQ,

Plaintiffs,

vs.

**COMPLAINT**
**JURY TRIAL DEMANDED**

Montevideo Public Schools/Independent School District #129,
Board of Education of Independent School District #129,
Bill Sprung (in his official and individual capacities),
Luther Heller (in his official and individual capacities),
and
Brock DuMarce (in his official and individual capacities),
jointly and severally, individually and collectively,

Defendants.

Plaintiffs, for their Complaint against Defendants, state and allege as follows:

## INTRODUCTION

Defendant Brock DuMarce, an adult male paraprofessional with a history of sexual misconduct toward female students, repeatedly and sexually groped an 8 year-old girl's (OQ) buttocks at the elementary school she attended (and where he worked). His behavior damaged OQ to the point where her mother had to quit her job and move them both out of town. Prior to the assaults/batteries on OQ, the school's administrators were on notice of DuMarce's prior sexual (and other) misconduct but hired and retained him anyway.

## PARTIES

1.  Kelly Quigley brings this action as parent and natural/legal guardian for the minor child, OQ. Ms. Quigley is a 41-year-old female. OQ was, at all times material, an 8-year-

old female. At all material times, Ms. Quigley and OQ resided in Montevideo, Minnesota and OQ attended Ramsey Elementary School (a part of Montevideo Public Schools/Independent School District #129).

2. Montevideo Public Schools/Independent School District #129 ("District"), an education corporation existing pursuant to Minn. Stat. § 123A.55 *et seq.*, is a public independent school district in Chippewa County, State of Minnesota. The District is a "person" within the meaning of 42 U.S.C. § 1983. Upon information and belief, the District and each of its component schools are recipients of federal financial assistance. The District is a non-sectarian public corporation and exempt from taxation pursuant to Minn. Stat. §§ 290.014 and 297A.70. Subd. 2(a)(1). Ramsey Elementary School is a school within the District.

3. The Board of Education of Independent School District #129 ("Board") is a public education corporation governing the School District pursuant to the laws of the State of Minnesota. The Board is a "person" within the meaning of 42 U.S.C. § 1983. Upon information and belief, the Board receives federal financial assistance.

4. Defendant Bill Sprung ("Sprung") was, at all times material hereto, Defendant District's Principal of Ramsey Elementary School. He resides at 3509 Eagle Drive E., Willmar, Minnesota 56201.

5. Defendant Luther Heller ("Heller") was, at all times material hereto, Defendant District's Superintendent. He resides at 1709 E. Sheridan Ave., #29, Montevideo, Minnesota 56265.

6. Defendant Brock Daniel DuMarce ("DuMarce") is a 20-year-old male. During the events described herein relating to OQ, he resided at 405 S. 7th St., Montevideo, Minnesota

and was employed as a paraprofessional by Defendant District at Ramsey Elementary School.

## JURISDICTION AND VENUE

7. This action arises under the Constitution and laws of the United States.

8. This Court has jurisdiction over Plaintiffs' Complaint pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States. Jurisdiction is also proper over Plaintiffs' claims under 28 U.S.C. §§ 2201-2202 because Plaintiffs seek a declaration of civil rights. This Court has supplemental jurisdiction over Plaintiffs' related state law claims under 29 U.S.C. § 1367(a) because those claims arise out of the same case or controversy as Plaintiffs' federal claims.

9. Venue is appropriate in this Court since Plaintiffs and Defendants reside within this Court's judicial district and the events or omissions giving rise to the claims occurred within this judicial district in accordance with 28 U.S.C. § 1391(b).

## PRELIMINARY STATEMENT

10. This is a civil rights case brought by Plaintiff Kelly Quigley. Ms. Quigley seeks to vindicate her daughter OQ's constitutional and statutory rights to equal access to educational opportunities: rights that Defendants have violated.

## FACTS

11. OQ was a student at Ramsey Elementary School, a school within the District, from 2018 through 2021.

12. During this time, Defendant Principal Sprung (and Defendant Superintendent Heller) hired and retained Defendant DuMarce to work as a paraprofessional at Ramsey Elementary School.

13. Prior to being hired by the District, Defendant DuMarce's history of misconduct included (but was not necessarily limited to):

   a. On March 27, 2019, DuMarce was arrested for disturbing the peace and disorderly conduct on Montevideo High School property. He had walked into the girls' locker room. He then proceeded onto the gym floor where he grabbed a female student's buttocks. DuMarce then grabbed another female student's buttocks when walking past her in Montevideo High School. DuMarce proceeded to follow another female student in the Montevideo High School hallway and asked her to make out. He then stopped and stared at another female's butt and made humping motions toward others. Montevideo High School captured these incidents on video. DuMarce also fought with a Montevideo teacher when the teacher tried to stop him.

   b. Law enforcement was called but DuMarce refused to stop when they commanded him to do so. He refused to answer law enforcement and resisted arrest. DuMarce had to be taken to the ground by law enforcement and still resisted, resulting in him being tased. He was taken to jail. While there, DuMarce attempted to grab a female staff member's vagina. When he was taken to the ER, he tried to grab a female staff member's vagina.

   c. On April 1, 2019, DuMarce was civilly committed relating to his misconduct at Montevideo High School.

14. Defendants were aware of the history of Defendant DuMarce described above prior to hiring him and during his employment and were required to conduct a background check, including with the Bureau of Criminal Apprehension ("BCA").

15. Defendant DuMarce's misconduct described above occurred on Montevideo High School grounds.

16. Complaints (including by faculty) were made about the hiring of Defendant DuMarce, including to Defendant Principal Sprung, expressing fear about the danger of allowing DuMarce access to elementary school children.

17. Complaints included Defendant DuMarce's misconduct history prior to his becoming employed as a paraprofessional at the District as well as his inappropriate behavior toward elementary school girls during his employment at the District's Ramsey Elementary School.

18. Defendant Principal Sprung (with the aiding and abetting of Defendant Superintendent Heller) brushed off these concerns about Defendant DuMarce, saying he wanted to give DuMarce "a chance" and claiming he would supervise DuMarce.

19. Defendant Principal Sprung did not supervise Defendant DuMarce.

20. Instead, Defendant DuMarce was given unfettered access to elementary school children, including OQ.

21. Defendant DuMarce engaged in sexual harassment/abuse of OQ at Ramsey Elementary School including but not necessarily limited to groping her buttocks on at least a dozen occasions.

22. When questioned by police, Defendant DuMarce claimed that he "did not recall" groping OQ and victim-blamed her by claiming that he thought the 8-year-old had a "crush" on him. He later pled guilty to 5th Degree Criminal Sexual Conduct.

23. This groping of OQ constituted sexual assault/battery based on gender.

24. The sexual abuse suffered by OQ was foreseeable by Defendants.

25. Defendants had multiple warnings and were on notice that Defendant DuMarce was a danger to girls, and should not have been allowed to interact with or supervise them in a school (or any) setting.

26. These acts occurred on school grounds despite the fact that school administration was on notice of Defendant DuMarce's dangerous propensities.

27. Despite knowledge of Defendant DuMarce's prior severe misconduct toward female students and his criminal history and civil commitment, Defendants' response to notice of his abuse of girls was grossly inadequate. Contrary to their obligation to protect the safety and education of all students, including little girls like OQ, Defendants' response was to ignore, minimize, and dismiss Defendant DuMarce's abusive behavior.

28. Defendants knew or should have known that the lack of adequate supervision and enforcement of policies significantly harmed OQ and placed her (and other girls) at unreasonable risk of harm.

29. Plaintiffs bring this suit to vindicate OQ's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, Title IX, the Minnesota Human Rights Act, and state tort claims. Plaintiffs seek relief in the form of compensatory and punitive damages, as well as injunctive and declaratory relief.

30. As a direct and proximate result of the above-described acts, Plaintiffs suffered, and continue to suffer, severe emotional and physical distress, and economic damages in excess of $75,000.00.

## COUNT ONE

**Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681,** *et seq.*:
**Discrimination Based on Sex**

(Asserted Against Defendants District and Board)

Plaintiffs reallege every paragraph of the Complaint.

31. The District and Ramsey Elementary School are recipients of federal financial assistance.

32. The acts and omissions of Defendants violated OQ's rights under Title IX by discriminating against her on the basis of sex.

33. Defendants had actual notice that harassment/abuse based on sex perpetrated by Defendant DuMarce was so severe, pervasive, and objectively offensive that it created a hostile climate based on sex that deprived OQ (and other girls) of access to educational programs, activities, and opportunities.

34. Defendants exhibited deliberate indifference to the abusive and harassing behavior Defendant DuMarce inflicted upon OQ (and other girls) based on sex in violation of Title IX. This indifference caused OQ (and other girls) to be subjected to the described sex discrimination and gender-based harassment/abuse.

35. Defendants' violations of Title IX were the actual, direct, and proximate cause of injuries suffered by Plaintiffs, as alleged.

36. Plaintiffs request judgment against Defendants as set forth in the Prayer for Relief.

## COUNT TWO

### Minnesota Human Rights Act, Minn. Stat. § 363A.13-.14
### Discrimination on the Basis of Sex

(Asserted Against Defendants District and Board)

Plaintiffs reallege every paragraph of the Complaint.

37.  The acts and omissions of Defendants violated OQ's rights under the Minnesota Human Rights Act by discriminating against her full utilization and benefit of an educational institution on the basis of her gender.

38.  Defendants had actual notice that their policies/practices constituted discriminatory acts and omissions and the effect such policies/practices had on OQ's ability to utilize and benefit from an educational institution.

39.  Defendants had actual notice that Defendant DuMarce engaged in abuse based on gender that was so severe, pervasive, and objectively offensive that it created a hostile climate that deprived OQ (and other girls) of full utilization and benefit of an educational institution.

40.  Defendants aided and abetted Defendant DuMarce's abuse of OQ based on her gender that prevented her full utilization of and benefit from an educational institution.

41.  Defendants' violations of the Minnesota Human Rights Act were the actual, direct and proximate cause of injuries suffered by OQ, as alleged.

42.  Plaintiffs request judgment against Defendants as set forth in the Prayer for Relief.

## COUNT THREE

### Vicarious Liability/Negligence

(Asserted against Defendants Board, District, Sprung and Heller)

Plaintiffs reallege every paragraph of the Complaint.

43.  At all times relevant herein, Defendants and their employees and agents were acting within the scope of their employment and were performing specific duties on behalf of Defendants.

44. At all times relevant herein, the employees and agents were in furtherance of performing professional duties set forth in statute, rules, policies, procedures, and common law, which were not discretionary in nature.

45. Defendants' employees, agents and employees failed to exercise or utilize ordinary care in supervising, protecting, and overseeing OQ, permitting the sexual harassment and abuse to occur.

46. Defendants owed OQ a duty of care consistent with the District's own policies and procedures related to supervision and training, the maltreatment of minors, and discipline.

47. Defendants further owed OQ the common law duty to protect her from the known or knowable actions of third parties based on a special relationship between the minor child and the District.

48. Defendants further owed OQ the duties to hire, train, and supervise employees consistent with the common law duty to protect.

49. OQ was required under Minn. Stat. 120A.22 (Minnesota's compulsory attendance requirement) to attend school.

50. Neglect occurred as a result of, and was proximately caused by, the careless, negligent, grossly careless, and reckless conduct of Defendants and their employees and agents which consisted of, *inter alia*, the following (this list is not necessarily exhaustive):

 a. Failure to properly vet, and investigate Defendant DuMarce;

 b. Failure to properly utilize knowledge of Defendant DuMarce's history of abusing female students;

 c. Failure to properly hire, train, and supervise personnel regarding their duties;

 d. Failure to undertake their mandatory duties to investigate, report, and discipline individuals involved in physical and emotional abuse of children;

e. Failure to undertake their mandatory duties to investigate, report, and remediate discriminatory practices against children;

f. Failure to inform the parents of the emotional and physical abuse taking place within the education setting;

g. Failure to exercise the ordinary care in responding to allegations of verbal and physical abuse involving children;

h. Failure to otherwise comply with the applicable laws and regulations of the State of Minnesota and the applicable federal laws and regulations; and

i. Failure to exercise the degree of care required under the circumstances.

51. The physical and emotional abuse and neglect by Defendants and their employees and agents was foreseeable for which reasonable and prudent educational professionals would take precautions and act upon.

52. Defendants' employees and agents breached their duties of care owed to OQ for which Plaintiffs sustained injuries, losses, and damages which are more fully described above and for which Plaintiffs did not contribute any degree of negligence.

53. As a direct and proximate result of the acts alleged above, Plaintiffs have been and continue to be damaged and suffer losses including, but not limited to, emotional distress, physical and mental anguish, bodily injury, physical sickness, pain and suffering, loss of dignity, in excess of $75,000.00. In addition, Plaintiff Quigley has incurred and will continue to incur, attorney fees and costs, medical/therapy and other bills for OQ.

## COUNT FOUR

### Negligent Infliction of Emotional Distress

(Asserted Against all Defendants)

Plaintiffs reallege every paragraph of the Complaint.

54. Defendants and their employees, agents, and/or representatives were acting with the scope of their employment at all times material hereto.

55. Defendants owed Plaintiffs a duty of reasonable care and supervision of OQ.

56. The fact that a child could be sexually harassed or abused by Defendant DuMarce was foreseeable.

57. Defendants breached the duty of reasonable care they owed to OQ.

58. Defendants' breach of their duties was the proximate cause of OQ's injuries.

59. OQ has suffered severe emotional distress as a result of Defendants' conduct.

60. OQ has suffered physical manifestations of emotional distress including those described herein.

61. Defendants are liable for the negligent acts and omissions of their staff.

62. As a direct and proximate result of the acts alleged above, Plaintiffs have been and continue to be damaged and suffer losses including, but not limited to, emotional distress, physical and mental anguish, bodily injury, physical sickness, pain and suffering, loss of dignity, in excess of $75,000.00. In addition, Plaintiff Quigley has incurred and will continue to incur, attorney fees and costs, medical/therapy and other bills for OQ.

## COUNT FIVE

### Sexual Assault / Sexual Battery

(Asserted Against Defendant DuMarce)

Plaintiffs reallege every paragraph of the Complaint.

63. During fall of 2019 through winter of 2020, Defendant DuMarce repeatedly intentionally engaged in harmful, unwanted, and offensive touching, and manipulation of OQ's body, including her buttocks.

64. In having sexual contact with the buttocks of the 8-year-old OQ without her consent and against her will, Defendant DuMarce committed sexual assault and battery against Plaintiff.

65. Defendant DuMarce acted with intent to cause harm or offensive contact/an intent to cause imminent apprehension of contact.

66. Defendant DuMarce caused harm or contact to an "intimate part" of OQ's body.

67. Defendant DuMarce perpetrated sexually offensive contact upon OQ.

68. Defendant DuMarce's touching of OQ's body was for the sexual gratification of Defendant DuMarce.

69. As a direct and proximate result of the acts alleged above, Plaintiffs have been and continue to be damaged and suffer losses including, but not limited to, emotional distress, physical and mental anguish, bodily injury, physical sickness, pain and suffering, past and future, in excess of $75,000.00.

## COUNT SIX

### Assault and Battery

(Asserted Against Defendant DuMarce)

Plaintiffs reallege every paragraph of the Complaint.

70. Defendant DuMarce engaged in offensive, unpermitted contact with OQ as described herein.

71. Defendant DuMarce touched OQ with the intent to harm or offend OQ.

72. OQ was 8 years old and could not and did not consent to the touching.

73. OQ was harmed or offended by Defendant DuMarce's conduct.

74. A reasonable person in OQ's position would have been offended by the touching.

75. Defendant DuMarce acted in a volatile, harassing, and lecherous manner toward OQ

and in her vicinity, causing reasonable apprehension of unwanted offensive contact.

76. As a result of the actions of Defendant DuMarce, OQ was intimidated and apprehensive.

77. The actions of Defendant DuMarce caused OQ to have a reasonable apprehension of imminent harm/offensive contact.

78. OQ believed that Defendant DuMarce had the present ability to cause offensive contact and bodily harm.

79. OQ's belief was reasonable.

80. The actions of Defendant DuMarce, factually stated herein with specificity, constitute assault and battery upon OQ which resulted in Plaintiffs suffering the damages alleged herein.

81. As a direct and proximate result of the acts alleged above, Plaintiffs have been and continue to be damaged and suffer losses including, but not limited to, emotional distress, physical and mental anguish, bodily injury, physical sickness, pain and suffering, past and future, in excess of $75,000.00.

## COUNT SEVEN

### Aiding and Abetting

(Asserted Against Defendants Sprung and Heller)

Plaintiffs reallege every paragraph of the Complaint.

82. Defendants' conduct constitutes aiding and abetting of Defendant DuMarce's illegal actions as described herein.

83. As a direct and proximate result of the acts alleged above, Plaintiffs have suffered and continue to suffer damages including, but not limited to, severe emotional distress, mental anguish and pain and suffering, in excess of $75,000.00.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court enter judgment against Defendants, providing the following relief:

1. Order granting Plaintiffs nominal, compensatory, and punitive damages against Defendants for violations of the Equal Protection Clause of the 14th Amendment of the United States Constitution.

2. Order granting Plaintiffs nominal, compensatory, and punitive damages against Defendants for violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq.

3. Order granting Plaintiffs nominal, compensatory. and punitive damages against Defendants for violations of the Minnesota Human Rights Act. Minn. Stat. § 363A.13-14, as well as other available relief identified in Minn. Stat. § 363A.33.

4. Order granting an injunction restraining and enjoining Defendants from failing to adequately protect OQ, and other similarly situated students, from sexual harassment/abuse within the school district.

5. Issue an injunction ordering Defendants to stop engaging in such unconstitutional and unlawful acts, and to develop and enforce policies and procedures for ending any such unconstitutional and unlawful acts and the hostile environment, including but not limited to the following:

    a. Require Defendants to perform adequate background checks on all job applicants and disclose the results of these background checks to the School Board prior to any hiring decisions.

    b. Require Defendants to implement mandatory and effective training programs for District faculty, staff, and students on issues relating to sexual harassment/abuse and methods to prevent staff members from harassing/abusing students.

    c. Require Defendants to adopt policies with specific guidelines for instructing staff and administrators about how to address complaints by students who have been harassed/abused based upon gender.

    d. Require Defendants to conduct assemblies for all students addressing issues of sexual harassment/abuse, wherein students are instructed about laws prohibiting harassment/abuse and discrimination based on gender and how to make complaints of same.

    e. Require Defendants to assign a peer mediator and/or other staff member to District schools to provide active monitoring for the school and to immediately address instances of harassment/abuse and/or discrimination that arise at the school.

    f. Require Defendants to maintain statistical data concerning each complaint of harassment/abuse based on gender made by a student or staff member, as well as the specific action District staff and/or administrators took to resolve that complaint.

    g. Require Defendants to take no reprisal or retaliatory action against any student, administrator or staff member who provides information in support or furtherance of the issues addressed in this Complaint.

6. An award to compensate Plaintiffs for the pain and suffering and for the humiliation caused by Defendants' unlawful treatment in the amount in excess of Seventy-Five Thousand and No/100 ($75,000.00) Dollars, per Defendant, per Count.

7. Actual damages for job loss, moving expenses, therapy and other losses and expenses incurred as a result of Defendants' liability arising from the misconduct alleged herein.

8. A civil penalty payable to the State of Minnesota.

9. Treble compensatory damages as provided in the MHRA, Minn. Stat. § 363.071 subd. 2.

10. For attorney fees, expenses and costs incurred in the prosecution of this action pursuant to, *inter alia,* 42 U.S.C. § 1988 and other applicable laws.

11. For interest, where appropriate, on any damages awarded.

12. For any other and further relief as the Court may deem just and proper.

**Plaintiffs demand a trial by jury on all applicable counts.**

Dated: 6/22/21

**LORI PETERSON LAW FIRM**

_____
Lori Peterson, #212490
Attorney for Plaintiffs
222 South Ninth Street, #1600
Minneapolis, Minnesota 55402
(612) 321-0606
LoriPeterson@LoriPetersonLawFirm.com